# In the United States Court of Federal Claims

No. 12-157C
(Filed: May 28, 2013)
**TO BE PUBLISHED**

|  |  |  |
|---|---|---|
| INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, LOCAL 1 and ITS MEMBERS, individually; EDWARD W. BOWE, individually; on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) | Motion to Dismiss Under RCFC 12(b)(1) and 12(b)(6); Fifth Amendment Taking Claim; 28 U.S.C. § 1500; 28 U.S.C. § 2501; Capacity to Sue on Behalf of an Unincorporated Association; RCFC 17(b)(3); Property Interest; Implied-In-Fact Contract. |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| THE UNITED STATES, | ) ) |  |
| Defendant. | ) ) |  |

Kenneth M. Golski, Ann Mayhew Golski, Golski Law Group, PLC, Norfolk, Va., for plaintiff.

Corinne A. Niosi, Trial Attorney, Franklin White, Jr., Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  Harvey Karp, Senior Trial Attorney, Office of the General Counsel, Navy Litigation Office, Washington, D.C., M. Kate DeMane, Counsel, Norfolk Naval Shipyard, Portsmouth, Va., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

In this Fifth Amendment taking suit against the United States, plaintiffs Edward W. Bowe and the International Federation of Professional and Technical Engineers, Local 1 allege that the United States Department of the Navy ("Navy") asserted control over the Norfolk Naval Shipyard Co-Operative Association ("Co-Op") and the Co-Op's assets and funds.  Compl. ¶¶ 5, 14 (docket entry 1, Mar. 6, 2012).  Plaintiffs claim that the Navy's assertion of control constituted a physical or regulatory taking of the Co-Op or its assets and funds or was a breach of an implied contract for sale of the business of the Co-Op to the Navy.  Id. ¶¶ 18–20.

On March 6, 2012, plaintiffs filed two actions based on the same facts, one in this court ("COFC") and the other in the United States District Court for the Eastern District of Virginia ("EDVA"). Although both actions were filed on the same date, the COFC complaint was filed before the EDVA complaint. *See* Affidavit of Kenneth Michael Golski ¶ 9 (docket entry 18-1, Oct. 24, 2012); Def.'s Resp. Time & Order 2–3 (docket entry 19, Oct. 25, 2012) (acknowledging that "it appears that the COFC complaint was filed earlier in the day on March 6, 2012, than when the EDVA complaint was filed").

Defendant moved to dismiss plaintiffs' complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). Mot. to Dismiss (docket entry 7, June 6, 2012). The Court heard oral argument on November 9, 2012.

## I.   Background[1]

The Co-Op is a non-profit unincorporated association, which was established in 1914 by the employees of the Norfolk Naval Shipyard ("NNSY"), without financial contribution from the United States government. Compl. ¶¶ 6–7. All NNSY civilian employees are members of the Co-Op. *Id.* ¶ 9. "The purpose of the Co-Op has been to provide clean, wholesome, and nourishing food and other such necessities and conveniences for the benefit of all" civilian and military employees at NNSY. *Id.* ¶ 8. The civilian employees of NNSY have continued to contribute their own personal funds to the Co-Op and, while the buildings and grounds used by the Co-Op belong to the Navy, Co-Op funds were used to purchase all of the Co-Op's "assets, equipment, and fixtures." *Id.* ¶¶ 7, 11.

Since its inception, the Co-Op has been under the overall direction of the NNSY Commanding Officer. *Id.* ¶ 9. The Co-Op was originally governed by its own constitution and by-laws. *Id.* ¶ 13. It has been subject to directives and instructions promulgated by the Navy for many years. Plaintiffs note that "[o]ver the years, the Navy and its military structure and component has become increasingly involved in the oversight and daily management of the Co-Op." *Id.* ¶ 12.

On or about January 6, 2010, the NNSY Commanding Officer "intentionally asserted the Navy's complete ownership and control over the Co-Op, its funds and assets." *Id.* ¶ 14. According to the complaint, plaintiffs "no longer ha[d] any control over the property of the NNSY Co-Op" after January 6, 2010. *Id.* To date, the Co-Op has not been disestablished and is apparently continuing to provide food and conveniences for NNSY employees. *See id.* ¶ 16; Oral Arg. Tr. 43:10–12 (docket entry 23, Nov. 9, 2012); *see also Int'l Fed'n of Prof'l & Technical Eng'rs et al. v. United States*, No. 2:12cv121, slip op. at 4 (E.D. Va. Dec. 20, 2012) ("At the hearing [concerning defendant's motion to dismiss], Plaintiffs'[] counsel offered additional information concerning the Co-Op's current status . . . . [N]otwithstanding the alleged injury, the Co-Op still exists and actively provides services to NNSY civilian employees.

---

[1] The facts recited herein are taken from plaintiffs' complaint, filed on March 6, 2012, and from documents relied upon by the parties in connection with their arguments on subject matter jurisdiction.

Therefore, . . . Plaintiffs acknowledge that [the Co-Op] effectively functions as it did prior to the alleged injury.").

## II. Discussion

### A. *Jurisdiction*

A court must determine at the outset of a case whether it has subject matter jurisdiction over the claims involved. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1365 (Fed. Cir. 2007). The plaintiff bears the burden of establishing subject matter jurisdiction. *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). "If the defendant or the court questions jurisdiction, the plaintiff cannot rely solely on allegations in the complaint, but must bring forth the relevant, adequate proof to establish jurisdiction." *Global Computer Enters., Inc. v. United States*, 88 Fed. Cl. 350, 402 (2009) (citing *McNutt*, 298 U.S. at 189), *modified*, 88 Fed. Cl. 466 (2009). Therefore, in resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may examine evidence and consider documents outside the four corners of the pleadings. *Id.*; *see also Sys. Application & Techs., Inc. v. United States*, 100 Fed. Cl. 687, 703 (2011), *aff'd*, 691 F.3d 1374 (Fed. Cir. 2012).

Plaintiffs state that the court has jurisdiction over their claims pursuant to the Tucker Act, 28 U.S.C. § 1491 (2006). Compl. ¶ 4. Pursuant to the Tucker Act, this court may hear "any claim against the United States founded . . . upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1305–06 (Fed. Cir. 2008). A plaintiff must, therefore, satisfy the court that "'a separate source of substantive law . . . creates the right to money damages.'" *Id.* (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)). Defendant does not dispute that the Takings Clause of the Fifth Amendment is such a money-mandating source.

Instead, defendant contends that three other provisions prohibit this court from hearing plaintiffs' claims: (1) 28 U.S.C. § 1500; (2) 28 U.S.C. § 2501; and (3) RCFC 17(b)(3).

#### 1. <u>28 U.S.C. § 1500 Does Not Bar Plaintiffs' Suit</u>

28 U.S.C. § 1500 divests this court of jurisdiction of any claim in respect to which a plaintiff "has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500.

"To determine whether § 1500 applies, a court must make two inquiries: (1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (citing *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163–64 (Fed. Cir.

2011)).  If either question is answered in the negative, § 1500 does not bar jurisdiction.  *Id.* (citing *Trusted Integration*, 659 F.3d at 1163–64).

Plaintiffs do not dispute that their two complaints are based on substantially identical operative facts.  *Cf. Trusted Integration*, 659 F.3d at 1164 (noting that a court should "focus only on whether two claims share the same operative facts and not on the relief requested").  Therefore, the question for the Court is whether the district court action was pending when plaintiffs filed in this court.

A suit is "pending" in another court for purposes of § 1500, "only when the suit shall have been commenced in the other court before the claim was filed in [the Court of Federal Claims]."[2]  *Kaw Nation of Oklahoma v. United States*, 103 Fed. Cl. 613, 617 (2012) (quoting *Tecon*, 343 F.2d at 949) (internal quotation marks omitted).  The pertinent facts of *Kaw Nation* are similar to those of the instant case.  Plaintiff, Kaw Nation of Oklahoma, filed two actions on December 29, 2006—one in the United States Court of Federal Claims and the other in the United States District Court for the Western District of Oklahoma.  *Kaw Nation*, 103 Fed. Cl. at 615.  The complaints in both courts alleged the same operative facts.  *Id.*  It was stipulated for the purposes of the § 1500 dispute that the COFC complaint was filed earlier in the day than the district court complaint.  *Id.*  Contending that *Tecon* was no longer good law after the Supreme Court's decision in *Tohono O'Odham Nation*,[3] the Government asserted that § 1500 divested the Court of Federal Claims of jurisdiction because plaintiff filed its actions in district court and the COFC on the same day.  *Kaw Nation*, 103 Fed. Cl. at 617.

The court denied the defendant's motion after finding that *Tohono* left intact the "order-of-filing rule."  *Id.* ("Despite defendant's claims, it is abundantly clear that *Tohono* did not expressly overrule *Tecon*.  The majority's opinion unambiguously stated that '[t]he *Tecon* holding is not presented in this case because the [Court of Federal Claims] action here was filed

---

[2] Known as the "order-of-filing rule," this principle dates back to *Tecon Engineers, Inc. v. United States*, 343 F.2d 943 (Ct. Cl. 1965).  In *Tecon*, a plaintiff displeased with the progression of its Court of Claims lawsuit filed a claim based on the same operative facts in a district court after more than two years of litigation in the Court of Claims.  The Court of Claims held that the plaintiff could not destroy jurisdiction by virtue of the later-filed suit.  "The long established rule of comity in such cases is that the court . . . which first obtains and exercises . . . jurisdiction, retains jurisdiction until a final judgment is entered."  *Tecon*, 343 F.2d at 946.

[3] In *Tohono*, the Supreme Court held that a common factual basis with a case pending in another court suffices to bar jurisdiction in the Court of Federal Claims under § 1500, regardless of the relief sought.  *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1731 (2011) ("Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit."); *see also id.* at 1729 ("Reading the statute to require only factual and not also remedial overlap makes sense in light of the unique remedial powers of the CFC.").  Because the COFC action in *Tohono* was filed after the district court action, there was no question that the district court action was pending.  Thus, the Court did not consider whether a later-filed district court case could also prohibit this court's jurisdiction.

4

after the District Court suit.'" (alteration in original) (quoting *Tohono*, 131 S. Ct. at 1729–30)); *see, e.g.*, *Warren Trust v. United States*, 107 Fed. Cl. 533, 554 (2012) ("In *Tohono*, the Supreme Court unequivocally declared that the '*Tecon* holding is not presented in this case because the [Court of Federal Claims] action here was filed after the District Court suit.'" (alteration in original) (quoting 131 S.Ct. at 1729–30)); *see also Tohono*, 131 S. Ct. at 1735 n.5 (Sotomayor, J., concurring) ("As the majority notes, . . . the validity of the Court of Claims holding in [*Tecon*] is not presented in this case. This Court has never considered that holding." (alteration in original)). "Therefore, *Tohono* did not impact *Tecon*'s order-of-filing rule." *Warren Trust*, 107 Fed. Cl. at 554; *see also Nez Perce Tribe v. United States*, 101 Fed. Cl. 139, 145 (2011) (holding that the "*Tecon* timing rule" remains "undisturbed").

Plaintiffs demonstrated that, at the time plaintiffs filed their complaint in the Court of Federal Claims on March 6, 2012, plaintiffs had not yet filed their complaint in the EDVA. *See* Def.'s Resp. Time & Order 2–3 ("[I]t appears that the COFC complaint was filed earlier in the day on March 6, 2012, than the EDVA complaint, and that plaintiffs have established the sequence of the filing of the two complaints on March 6, 2012."). Because plaintiffs filed their complaint in the Court of Federal Claims before they filed their EDVA complaint, the district court action was not pending at the time this case was filed. As a result, § 1500 does not bar this action.

        2.      <u>Plaintiffs' Regulatory Taking Claim Based on the<br>Directives and Instructions of the Navy is Barred by § 2501</u>

Under § 2501, a plaintiff has six years from the time an action accrues to file a claim. *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1359 (Fed. Cir. 2013). A taking claim based on the Fifth Amendment "accrues when the act that constitutes the taking occurs." *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009). Plaintiffs filed their taking claim in this court on March 6, 2012. Therefore, plaintiffs' claims are timely only if the act they allege constitutes a taking occurred on or after March 6, 2006.

Plaintiffs' complaint characterizes the NNSY Commanding Officer's statement on January 6, 2010 as both a physical and a regulatory taking. *Compare* Compl. ¶ 18 ("The intentional assertion of full ownership and control of the Co-Op constitutes a physical taking by the United States Government through the Navy under the 5th Amendment of the United States Constitution.") *with id.* ¶ 19 ("The intentional assertion of full ownership and control of the Co-Op and its assets under the Directives and Instructions of the Navy constitutes a regulatory taking by the United States Government under the 5th Amendment of the United States Constitution."). The only difference the Court can identify between these claims is that plaintiffs may arguably base their "regulatory" taking claim, not on the NNSY Commanding Officer's statement, but rather on the Directives and Instructions of the Navy. The complaint does not specify which Directives and Instructions plaintiffs believe constitute a regulatory taking. Plaintiffs, in their opposition to defendant's motion to dismiss, identify three Navy Instructions—BUPERSINST 12990.1, NAVSHIPYDNORINST 12990.1, and BUPERSINST 12990.1A—that may form the basis for plaintiffs' regulatory taking claim. *See* Pls.' Opp'n 3–5 (docket entry 12, Aug. 20, 2012). A claim based on these Instructions, however, is barred by 28 U.S.C. § 2501, the Court's statute of limitations.

BUPERSINST 12990.1A—issued in February 2004—is the most recent Instruction identified by plaintiffs. *See* Pls.' Opp'n 5. Therefore, taken in the light most favorable to plaintiffs, the act that plaintiffs allege constitutes a regulatory taking occurred in early 2004 at the latest, well before March 6, 2006. Since the regulations underlying plaintiffs' regulatory taking claim were enacted more than six years before plaintiffs filed suit, plaintiffs' regulatory taking claim is time-barred. *Navajo Nation v. United States*, 631 F.3d 1268, 1273–74 (Fed. Cir. 2011).

        3.      <u>Plaintiffs Lack Capacity to Maintain Taking<br>           Claims on Behalf of the Co-Op</u>

Defendant contends that plaintiffs do not have capacity to bring a suit for a taking of the Co-Op's funds and assets. Capacity is jurisdictional: a claimant must plead and prove that it has capacity to file suit before the Court can hear the claimant's case. *KDH Corp. v. United States*, 23 Cl. Ct. 34, 37 (1991) (citing *Mather Constr. Co. v. United States*, 475 F.2d 1152, 1155 (Cl. Ct. 1973) (per curiam) (granting motion to dismiss for lack of jurisdiction where corporate plaintiffs lacked capacity to sue under California law)). Plaintiffs allege that the Co-Op is "an unincorporated association . . . existing under the laws of the Commonwealth of Virginia." Compl. ¶ 1. Under RCFC 17(b)(3), an unincorporated association's capacity to sue or be sued is determined by the law of the applicable state.

Virginia law is clear that only certain individuals may sue to enforce the rights of unincorporated entities. In interpreting the (substantially similar) predecessor statute, the Virginia Supreme Court held that legal actions brought pursuant to Virginia Code § 8.01-15 on behalf of unincorporated associations must be "instituted by the officers of such unincorporated association or order who have charge of its affairs or by members of the association or order who have been legally authorized to proceed with the litigation." *Brown v. Va. Advent Christian Conference*, 76 S.E.2d 240, 242 (1953); *see Jeffress v. Titius*, 756 F. Supp. 255, 257 (W.D. Va. 1990) (citing *Brown*, 76 S.E.2d at 242), *aff'd*, 925 F.2d 1456 (4th Cir. 1991); *see also Liu v. Lung*, No. 1:06cv776, 2006 WL 2850651, at *3 (E.D. Va. Oct. 2, 2006) (interpreting Va. Code § 8.01-15 to mean officers or those "having charge of [the association's] affairs" may litigate on behalf of an association; finding capacity for association's trustee and sole officer). Accordingly, "[t]he law does not authorize suits to be brought in the name of individual members, or by third parties claiming representation of member interests," because "only officers and legally authorized members may institute an action in the Co-Op's name." *Int'l Fed'n*, slip op. at 10.

Plaintiffs are not officers of the Co-Op in charge of the Co-Op's affairs and none of the plaintiffs have been authorized to initiate this litigation on the Co-Op's behalf. *See Brown*, 76 S.E.2d at 242; *Jeffress*, 756 F. Supp. at 257. In fact, plaintiffs acknowledge that the Co-Op is not interested in pursuing this suit or authorizing them to maintain this action on the Co-Op's behalf. Pls.' Opp'n 18 ("As previously described, the Co-Op is under the overall direction of the Shipyard Commander. Despite repeated requests and efforts to take corrective action, the Co-Op will not institute an action against itself . . . ."). Because plaintiffs are not "officers of [the Co-Op] who have charge of its affairs or . . . members of the [Co-Op] who have been legally authorized to proceed with the litigation," plaintiffs may not maintain this action on behalf of the Co-Op. *See Brown*, 76 S.E.2d at 242.

### B. *Plaintiffs' Claim for a Taking of the Co-Op*

Plaintiffs allege that "[o]n or after January 6, 2010, the NNSY Base Commander intentionally asserted the Navy's complete ownership and control over the Co-Op . . . and has maintained such control and ownership from that date." Compl. ¶ 14. In order to survive a Rule 12(b)(6)[4] motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This means that the complaint must "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. Accordingly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (brackets, internal quotation marks, and citations omitted)).

When ruling on a Rule 12(b)(6) motion to dismiss, the court "must accept as true all the factual allegations in the complaint" and must make "all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001); *accord Hornback v. United States*, 601 F.3d 1382, 1384 (Fed. Cir. 2010). The court may not "choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012). Nonetheless, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Twombly*, 550 U.S. at 555.

Finally, courts "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record" when deciding a motion to dismiss. *Love Terminal Partners v. United States*, 97 Fed. Cl. 355, 385 (2011) (alteration in original) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court also "has discretion to consider materials beyond the pleadings and 'is not limited to the four corners of the complaint' when ruling upon an RCFC 12(b)(6) motion." *Love Terminal*, 97 Fed. Cl. at 385 (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004) (discussing FRCP 12(b)(6)). Courts "have allowed [such] consideration of matters incorporated by reference or integral to the claim," *id.*, because "[t]hese matters are deemed to be a part of every complaint by implication." 5B Wright & Miller, *supra*, § 1357; *see also In re Syntex Corp. Secs. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)

---

[4] The Rules of the United States Court of Federal Claims generally mirror the Federal Rules of Civil Procedure ("FRCP"). *See* RCFC 2002 Rules Committee Note ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."). RCFC 12 is substantially identical to FRCP 12. The Court therefore relies on cases interpreting FRCP 12 as well as on those interpreting RCFC 12.

("When deciding a motion to dismiss, a court may consider the complaint and 'documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002))); *Love Terminal*, 97 Fed. Cl. at 385 ("Where a complaint refers to a document but does not incorporate it, a party may submit a copy of the document to support or oppose a motion to dismiss as long as the document is 'central' to the complaint." (quoting *P.D. v. Mt. Vernon Cmty. Sch. Corp.*, No. 1:07cv1048, 2008 WL 1701877, at *1 (S.D. Ind. Apr. 10, 2008)).

Defendant argues that plaintiffs' claim does not meet the threshold requirement for a taking: identification of a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. *See Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1329 (Fed. Cir. 2012), *cert. denied*, 132 S. Ct. 2780 (2012); *see also Maritrans Inc. v. United States*, 342 F.3d 1344, 1351 (Fed. Cir. 2003); *Cienega Gardens v. United States*, 331 F.3d 1319, 1328 (Fed. Cir. 2003) ("For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken . . . .").

Courts look for "'crucial indicia of a property right,' such as the ability to sell, assign, transfer, or exclude." *Hearts Bluff*, 669 F.3d at 1330 (citing *Conti v. United States*, 291 F.3d 1334, 1342 (Fed. Cir. 2002)). None of these indicia are present in this case. The complaint does not assert that plaintiffs have any interest in the Co-Op that they can sell, assign, transfer, or that would enable them to exclude others from the Co-Op. Plaintiffs respond that their interest arose out of the Co-Op constitutions, but even the constitutions belie plaintiffs' claims that they own the Co-Op. In fact, the Co-Op constitutions expressly provided that no one shall own the Co-Op. *See, e.g.*, Co-Op Const. of 1978, art. II (Pls.' Opp'n App. 64) ("The association shall not be incorporated. No stock will be issued or held by anyone in the name of the association, nor will any individual or individuals participate in the division of profits, if any, made by the association."); *see also* Co-Op Const. of 1949, art. III (Pl.'s Opp'n App. 46) ("No stock shall be issued or held by anyone and no one is to participate in any profits made by the Association.").

Plaintiffs also claim to have an ownership interest in the Co-Op based on Mr. Bowe's status as an NNSY civilian employee. Compl. ¶¶ 2, 7. Plaintiffs assert that the Co-Op was established in 1914 using only the personal funds of NNSY employees, *id.* ¶ 6, and "[e]mployees have continued contributing their own personal funds to the Co-Op," *id.* ¶ 7. But plaintiffs do not allege that these donations created a right that contributing employees could then sell, transfer, assign, or exercise to exclude others. Accordingly, such contributions do not create a property interest.

Moreover, even if plaintiffs had a property interest in the Co-Op, they fail to allege government action that could constitute a taking. The government's mere assertions of ownership cannot, standing alone, constitute a taking. *Cent. Pines Land Co. v. United States*, 107 Fed. Cl. 310, 325 (2010) ("In order to establish a taking, something more than the mere assertion of title [(i.e., ownership)] is required."); *see also Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 889 (Fed. Cir. 1983) ("The purpose and function of the [Fifth] Amendment being to secure citizens against governmental expropriation, and to guarantee just compensation for the property taken, what counts is not what government said it was doing, or what it later says its intent was, or whether it may have used the language of a proprietor. What counts is what the

government *did*."). Plaintiffs' complaint does not allege that the Navy *did* anything that interfered with any rights plaintiffs had in the Co-Op. Accordingly, without more, plaintiffs' claim that the Navy "asserted" its ownership of the Co-Op is insufficient to state a claim for a compensable taking.

### C. *Plaintiffs' Claim for Breach of an Implied-In-Fact Contract*

Plaintiffs also allege a breach of an implied-in-fact contract based on the same facts that plaintiffs rely upon in support of their taking claim. The United States Court of Appeals for the Federal Circuit has delineated the elements of an implied-in-fact contract:

> Plaintiff has the burden to prove the existence of an implied-in-fact contract. *Pac. Gas & Elec. v. United States*, 3 Cl. Ct. 329, 339 (1983), *aff'd*, 738 F.2d 452 (Fed. Cir. 1984) (table). An implied-in-fact contract with the government requires proof of (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) "actual authority" on the part of the government's representative to bind the government in contract. *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998).

*Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003).

Plaintiffs' sole, unsupported allegation is that "[t]he intentional assertion of full ownership and control of the Co-Op and its assets by the United States Government without payment represents a breach of an implied contract for sale of the Co-Op business between the United States and the Co-Op and its members." Compl. ¶ 20. Plaintiffs fail to allege any facts showing mutuality of intent, consideration, offer and acceptance, or that they had an agreement involving a government representative with actual authority to bind the government in contract. *See Hanlin*, 316 F.3d at 1328. Therefore, "[u]nfortunately for plaintiff[s], the allegations of fact in the complaint do not plausibly support the existence of any of the four elements of an implied-in-fact contract." *Grayton v. United States*, 92 Fed. Cl. 327, 334 (2010) (citing *Twombly*, 550 U.S. at 560).

Instead, plaintiffs' argument in support of their implied-in-fact contract claim is merely a restatement of their taking claim. *See, e.g.*, Pls.' Opp'n 26–27 ("As the United States acted directly and physically took the property of the Co-Op members, there is, under the law, an implied-in-fact contract to pay just compensation."). However, *Great Falls Manufacturing*, the case on which plaintiffs rely exclusively, actually equates an uncompensated taking with a breach of an implied-*in-law* contract. *United States v. Great Falls Mfg. Co.*, 112 U.S. 645, 656–57 (1884). It is well established that the Court of Federal Claims does not have jurisdiction over claims involving implied-in-law contracts. *See, e.g.*, *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996) (stating that the Tucker Act only extends to express or implied-in-fact contracts, based on a meeting of the minds, and not to implied-in-law contracts).

Plaintiffs must do more than make a "wholly conclusory statement of [a] claim," *Twombly*, 550 U.S. 561, based on an incorrect reading of *Great Falls*, to meet their burden to state a claim based upon an implied-in-fact contract. Plaintiffs have not alleged facts sufficient

to state a claim that an implied-in-fact contract existed or was breached by the government. The Court therefore grants defendant's motion to dismiss plaintiffs' implied-in-fact contract claim.

## CONCLUSION

For the foregoing reasons, the Court lacks jurisdiction over plaintiffs' regulatory taking claim based on the Navy Instructions and plaintiffs have failed to state a claim upon which relief can be granted for either a physical taking or for breach of an implied-in-fact contract. In addition, the Court holds that plaintiffs lack capacity to bring litigation on behalf of the Co-Op. Accordingly, defendant's motion to dismiss based upon RCFC 12(b)(1) and RCFC 12(b)(6) is **GRANTED**, and plaintiffs' complaint is **DISMISSED**.

The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

 s/ George W. Miller
GEORGE W. MILLER
Judge